IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Billy Lockett,                                  Case No. 3:10 CV 1024

          Plaintiff,                    MEMORANDUM OPINION
                                                AND ORDER
-vs-
                                                JUDGE JACK ZOUHARY
Paul Zatko, et al.,

          Defendants.

**INTRODUCTION**

This is a race discrimination case brought by Plaintiff Billy Lockett, an African-American, against Chrysler Group, LLC ("Chrysler"), his current employer, and Paul Zatko ("Zatko"), his former supervisor. Plaintiff alleges he experienced racial discrimination, harassment, and retaliation by Defendant Zatko while employed by Defendant Chrysler in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Ohio Revised Code § 4112. Discrimination and retaliation claims brought under Ohio law are subject to the same analysis as federal Title VII claims. *Hollins v. Atlantic Co.*, 188 F.3d 652, 658 (6th Cir. 1999) (discrimination claims); *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (retaliation claims). Plaintiff also alleges intentional infliction of emotional distress against both Defendants.

Defendants Zatko and Chrysler moved for summary judgment (Doc. Nos. 48; 47), which Plaintiff opposed (Doc. No. 54) and Defendants replied (Doc. Nos. 55–56).

**BACKGROUND**

Plaintiff began working for Chrysler in 1988 as an hourly employee at the Huntsville, Alabama assembly plant. In 1992, Plaintiff was transferred to Chrysler's Toledo machining facility, where he remains employed as an hourly employee in the material handling department. In 2000, Chrysler hired Zatko as a production supervisor at the Toledo facility. Zatko was assigned to supervise Plaintiff and other employees in the material handling department in January 2009, and remained Plaintiff's supervisor until April 2009 -- a period of approximately three months.

**The February 2009 "New Rope" Comment**

On February 17, 2009, Plaintiff asked Zatko for a pair of safety glasses, as all employees are required to wear safety glasses while working in the facility. Plaintiff told Zatko, "Paul, don't bring the grandma glasses" (Doc. No. 43 at 24). According to Plaintiff, Zatko retrieved a pair of glasses, gave them to Plaintiff, and said "I bet you wouldn't complain if I put a new rope around your neck" (Doc. No. 43 at 24). Plaintiff responded "what about the old rope" (Doc. No. 43 at 25). Steve Seem, a co-worker present at the scene, responded "Well, Billy, don't you know, the new rope is going to leave burn marks" (Doc. No. 43 at 25). Zatko admits making a comment about a "new rope," insisting the comment was made in the context of a conversation regarding Plaintiff's constant complaining about his work assignments. According to Zatko, he retrieved the only style of glasses available at the time and gave them to Plaintiff, who stated, "why are you giving me these old granny glasses" (Doc. No. 44 at 26). Zatko alleges he laughed at Plaintiff's response, as did Seem and Plaintiff, and Zatko then responded "you'd complain if you got hung with a new rope" (Doc. No. 44 at 26).

Shortly after this exchange, Plaintiff ran into Nick Weber, who at the time served as labor relations supervisor. Plaintiff asked Weber "if I told you that somebody just said they want to put a new rope around my neck, how would you feel about it?" (Doc. No. 43 at 26). Weber immediately responded such a comment would be inappropriate, interviewed Plaintiff about the situation, and informed Plaintiff he would investigate further (Doc. No. 43 at 26). Chrysler granted Plaintiff's request to leave work early that day and granted Plaintiff's request to transfer to third shift.[1]

Weber investigated Plaintiff's complaint, interviewing Zatko who did not deny making the "new rope" comment. Zatko admitted he jokingly told Plaintiff "you'd complain if they hung you with a new rope"-- a comment Zatko argues referred to Plaintiff's complaining and was not intended as a racial statement. Weber also interviewed Seem, the co-worker present during the exchange, who confirmed Plaintiff did not indicate he was offended or threatened by the "new rope" comment (Doc. No. 45-1 at 13).

Weber forwarded the results of his investigation to Chrysler's Global Diversity Office, which reviewed the results and concluded Zatko's remark violated Chrysler Group's Discrimination and Harassment Policy. Chrysler issued a written warning to Zatko as disciplinary action (Doc. No. 45-1 at 17). On February 25, 2009, Weber informed Plaintiff that Chrysler had completed its investigation and taken appropriate action.

Shortly thereafter, on March 9, 2009, Plaintiff filed a charge of racial harassment with the Ohio Civil Rights Commission ("OCRC") based on the "new rope" comment. In December 2009,

---

[1] As it turns out, Zatko was also transferred to third shift, though the record is unclear as to who was transferred first. Zatko claims he was unaware of Plaintiff's transfer request and testified that Chrysler, not him, decided on the shift change (Doc. No. 44 at 38). Plaintiff indicated Zatko was already on third shift when he first arrived -- "If I would have known that he [Zatko] was going to be on third shift, I never would have went" (Doc. No. 43 at 22).

3

the OCRC determined there was no probable cause to support Plaintiff's allegations (Doc. No. 43-1 at 22). The U.S. Equal Employment Opportunity Commission ("EEOC") adopted the OCRC's findings in February 2010 (Doc. No. 43-1 at 23).

### The March 2009 BMF Comment

On March 23, 2009, Zatko approached Plaintiff, who was operating a forklift, to assign him to a project requiring the operation of a crane. When asked if he had a crane operator's license, Plaintiff responded that Zatko was already aware his license had expired. The parties disagree as to how the exchange continued. Plaintiff alleges he immediately asked for a union steward to be present during the conversation, and Zatko's response was "I don't need a damn steward to talk to you" (Doc. No. 43 at 32). Because Plaintiff felt the need to get away from Zatko, Plaintiff claims he backed up his forklift and began to drive away, at which time Zatko allegedly said "Don't you back away from me, you black mother fucker" (Doc. No. 43 at 32). Defendants' side of the story is quite different: Plaintiff refused to clarify why he did not have a crane operator license, became argumentative, disrespectful, and responded to Zatko by shouting and saying "fuck you" directly to his face before driving away. Zatko denies calling Plaintiff a "black mother fucker" (Doc. No. 44 at 45).

Sean Mack, a human resources generalist and labor relations representative, investigated the incident at Plaintiff's request. Mack interviewed Plaintiff and obtained a written statement from Zatko. Mack also interviewed a witness identified by Plaintiff; however, the witness was unable to substantiate either version of the event. Because Mack could not substantiate the conflicting stories, his investigation was inconclusive (Doc. No. 46 at 12).

4

**The "Tick Tock" Comments**

During his deposition, Plaintiff, for the first time, alleged that between the time Zatko made the "new rope" comment and when Zatko called him a "black mother fucker," Zatko repeated "tick tock" to him on numerous occasions as they passed each other in the facility. Plaintiff did not reference this allegation in the charges filed with the OCRC or in the Complaint filed with this Court. Defendants argue Zatko never made such comments (Doc. No. 44 at 45–46).

**Plaintiff's Verbal Warnings and the March 2009 Written Discipline**

According to Defendants, Plaintiff continually failed to perform his job duties adequately and received numerous verbal warnings regarding the way he left his work area. Area manager Julie Boik specifically counseled Plaintiff with his union steward present, that he was to wear safety glasses, leave his area set up properly, and listen to his supervisors (Doc. No. 48-3 at 16–17). On March 18, 2009, Chrysler issued Plaintiff another verbal warning after several complaints regarding Plaintiff's failure to leave his work area in proper condition (Doc. No. 43-1 at 28). Less than two weeks later, Boik, after being notified Plaintiff's work area was once again improper, issued Plaintiff written discipline (Chrysler calls it a "written verbal warning") for violating Chrysler's Standard of Conduct No. 5 (failure to exert normal effort on the job) and No. 6 (failure to follow instructions of supervisor) (Doc. No. 43-1 at 28).

Defendants argue that although Zatko was present when Chrysler gave Plaintiff the written discipline, Zatko was not involved in the discipline -- that decision was made solely by Boik. Zatko states he was unaware of Chrysler's discipline until the joint meeting with Boik who made the decision (Doc. No. 44-1 at 44–48). Plaintiff believes Zatko bears some responsibility for the decision, although Plaintiff did not receive any time off for the written discipline.

5

On April 2, 2009, Plaintiff filed another charge of discrimination with the OCRC, alleging race discrimination, harassment, and retaliation. Once again, the OCRC issued a no probable cause determination (Doc. No. 43-1 at 26), which was adopted by the EEOC (Doc. No. 43-1 at 27). Plaintiff also filed a grievance as a result of the March written discipline. To resolve the grievance, Weber and committeeman Rodney Ridgway agreed to rescind Plaintiff's warning (Doc. No. 43-1 at 29). Zatko stopped supervising Plaintiff in April 2009, and Plaintiff has experienced no further problems with Zatko.[2]

## STANDARD OF REVIEW

Pursuant to Federal Civil Rule 56(a), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When considering a motion for summary judgment, the court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the court determines only whether the

---

[2] In his Complaint, Plaintiff asserts he has been subjected to harassment and discrimination at Chrysler since the mid 1990's (Doc. No. 1 at 3). Plaintiff asserts the discrimination involved his supervisor calling him names such as "black ass," "black mother fucker," and "black dumb bitch" (Doc. No. 1 at 3). Those allegations were the basis for previous suits by Plaintiff against Chrysler. In his first suit (Case No. 3:95-CV-7686), Plaintiff also alleged racial discrimination and retaliation. The court dismissed the case on summary judgment in December 1996. Plaintiff's second suit against Chrysler (Case No. 3:97-CV-7332) -- filed less than a year after the first -- also alleged racial harassment. This lawsuit was tried to a jury, which rendered a unanimous verdict in favor of Chrysler. Plaintiff admits the allegations in his current Complaint that he was called "black ass," "black mother fucker," and "black dumb bitch" were part of his previous suits against Chrysler (Doc. No. 43 at 20–21), and that he was never again called "black dumb bitch" or "black ass" after the jury verdict. *Id.* These past allegations occurred years before Zatko was hired by Chrysler and are too far removed in time to be part of Plaintiff's current hostile work environment claim.

case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

## RACIAL DISCRIMINATION AND HARASSMENT

A hostile work environment is a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993). To establish a prima facie case, Plaintiff must show: (1) he was a member of a protected class; (2) he was subjected to unwelcome racial harassment; (3) the harassment was based on Plaintiff's race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) Defendants are liable for the creation of that environment. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citing *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999)). The key test is whether the alleged harassment was "severe or pervasive." *Kelly v. Senior Centers, Inc.*, 169 Fed. App'x 423, 428 (6th Cir. 2006). Claims are evaluated both objectively and subjectively: "[t]he conduct must be severe or pervasive enough that a reasonable person would find [it] hostile or abusive, and the victim must subjectively regard that environment as abusive." *Jackson v. Quanex Corp.*, 191 F.3d 647, 658 (6th Cir. 1999) (citing *Black v. Zaring Homes, Inc.*, 104 F.3d 822, 826 (6th Cir. 1997)).

The parties agree the first element of the prima facie case is satisfied here: Plaintiff is a member of a protected group. For summary judgment purposes, this Court finds the second element is also satisfied. The third element limits this Court's analysis to harassment based on Plaintiff's race. *Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011); *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000). And this Court examines whether the totality of the alleged racial

7

harassment was sufficiently severe or pervasive to create a question for the jury under the fourth element. *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

### Conduct Based on Race

Plaintiff may prove harassment based on race by either (1) direct evidence of the use of race-specific and derogatory terms, or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace. *CSX Transp. Co.*, 643 F.3d at 511 (citing *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)). Though harassing conduct need not be overtly racist, Plaintiff must demonstrate he would not have been harassed but for his race. *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

Plaintiff alleges three specific instances of racial harassment: Zatko's "new rope" comment; being called a "black mother fucker;" and Zatko's "tick tock" comments. This Court draws all inferences in a light most favorable to Plaintiff.

According to Plaintiff, Zatko handed him the safety glasses he asked for and said "I bet you wouldn't complain if I put a new rope around your neck" (Doc. No. 43 at 24). The comment itself did not use racist words or contain racist language. Zatko, who disputes Plaintiff's recollection of the precise language used, alleges he made the comment in the context of Plaintiff's constant complaining. Zatko believes the comment to be a common phrase and alleges he has never used it as a racial slur. A comment regarding placing a "new rope" around an African-American, however, could be considered racial harassment. As Plaintiff points out, many courts have recognized references to lynching and nooses as racial harassment. *See, e.g.*, *Allen v. Mich. Dep't of Corr.*, 165 F.3d 405, 411 (6th Cir. 1999) ("[E]vidence of racial harassment is the threatening letter . . .

8

contain[ing] a reference to lynching, [and] a drawing of a . . . noose."). While this comment was not an overt reference to lynching or to a noose, a reasonable jury could find it was based on race.

Calling Plaintiff a "black mother fucker" was derogatory and plainly based on race. Just as plainly, however, a reasonable jury could not find the "tick tock" comments were based on race. Plaintiff has no direct evidence of racial causation -- this Court cannot see how "tick tock" can be considered race-specific or derogatory. Additionally, Plaintiff has offered no comparative evidence demonstrating Zatko treated Plaintiff differently because of his race. Plaintiff admitted he did not know what Zatko meant by "tick tock," but was later told by a union steward that the comment may have been made to signify Plaintiff's time with Chrysler was running out (Doc. No. 43 at 85–86). Any which way, this interpretation is not race-based.

**Defendants' Conduct Was Not "Severe or Pervasive"**

This Court next considers whether the totality of the race-based harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *General Motors Corp.*, 187 F.3d at 562 (holding courts must examine the "totality of the circumstances"). Factors that may be considered in making this determination include: the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with work performance. *Hafford*, 183 F.3d at 512. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment . . . ." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). Simple teasing, offhand comments, occasional offensive utterances, and other isolated incidents, unless extremely serious, do not rise to the level required to create a hostile work environment. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 790 (6th Cir. 2000); *CSX*

9

*Transp. Co.*, 643 F.3d at 512–13. "To hold otherwise would risk changing Title VII into a code of workplace civility, a result [the Sixth Circuit has] previously rejected." *Id.* And "conduct that is deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person, is not always legally actionable as a 'hostile work environment.'" *Kelly*, 169 Fed. App'x at 429.

Under the record facts, Plaintiff fails to establish a prima facie case of a racially hostile work environment. Drawing all inferences in a light most favorable to Plaintiff, he fails to set forth sufficient facts to satisfy the objective "severe and pervasive" standard.

Only two of Zatko's comments -- the "new rope" comment and the "black mother fucker" statement -- were racially charged. While inappropriate, these isolated remarks do not amount to a pervasive, aggressive, or constant course of conduct. In other words, there was no frequency in Zatko's discriminatory behavior, and nothing indicates he treated Plaintiff different because of his race. Neither statement involved a physical threat to Plaintiff. Although Plaintiff alleges the "new rope" comment made him feel a "lynching moment" (Doc. No. 54 at 14), the comment, in context, cannot be considered threatening under an objective standard.

Unlike cases cited by Plaintiff, this case does not involve death threats or the physical presence of a rope, let alone a noose. For example, plaintiff in *Allen v. Mich. Dep't of Corrections* was constantly subjected to racial epithets and insults by his supervisors and received a threatening note signed by the "KKK." 165 F.3d 405, 411 (6th Cir. 1999). The note included offensive language, a death threat, and contained an overt reference to lynching: a drawing of a stick figure with a noose around its neck. *Id.* Similarly, in *Little v. Nat'l Broad Co.*, various plaintiffs observed an actual noose with the name of an African-American co-worker taped to it hanging in the workplace. 210 F. Supp.

10

2d 330, 391 (S.D.N.Y. 2002). Indeed, every case Plaintiff cites involved actual threats or racial harassment in the form of actually displaying a hangman's noose.

Nothing in this record supports Plaintiff's subjective assertion that the "new rope" comment was an actual threat of violence. Zatko's statements simply do not rise to the level of severity required to make out a prima facie case of hostile work environment.

### Defendants Are Not Liable for the Creation of a Hostile Work Environment

To satisfy the fifth element of his prima facie case, employer liability, Plaintiff must demonstrate Chrysler is vicariously liable for Zatko's harassment. *Barrett v. Whirlpool Corp.*, 556 F.3d at 516 (citing *Hafford*, 183 F.3d at 513); *Faragher*, 524 U.S. at 807 (holding employers are vicariously liable only for actionable hostile environments). Because Zatko's comments were not sufficiently severe or pervasive, Chrysler cannot be held vicariously liable.

Finally, because Zatko's conduct was not actionable harassment, this Court does not need to address whether Chrysler would be successful in asserting an affirmative defense under the *Ellerth/Faragher* framework for supervisor liability.

### RETALIATION

Plaintiff also claims Defendants retaliated against him for filing a discrimination grievance with the OCRC. Title VII forbids employer retaliation against employees for making a charge, testifying, assisting, or participating in a Title VII investigation, proceeding, or hearing. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006). To establish a prima facie case of retaliation, Plaintiff must show: (1) he engaged in protected activity; (2) Chrysler knew of his protected activity; (3) Chrysler took an adverse employment action against Plaintiff; and (4) there was

11

a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Plaintiff must show "a reasonable employee would have found the [retaliation] *materially adverse*, which . . . means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 67-68 (emphasis added). If Plaintiff establishes his prima facie case, the burden of production shifts to Defendants to "articulate some legitimate, nondiscriminatory reason" for their actions. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Plaintiff, who bears the burden of persuasion throughout the entire process, must then demonstrate "the proffered reason was not the true reason for the employment decision" but a mere pretext. *Texas Dept. Of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Defendants do not dispute Plaintiff satisfies the first and second elements of his prima facie case (Doc. No. 47-1 at 18). Therefore, the issues before this Court are whether disciplining Plaintiff constituted an "adverse employment action," and whether a causal connection existed between Plaintiff's protected activity and the "adverse employment action."

**A Warning Is Not An "Adverse Employment Action"**

Plaintiff speculates a single written discipline constitutes an "adverse employment action" under Title VII. But in the Sixth Circuit, a written warning is not an adverse employment action when it does not significantly change a plaintiff's employment status. *See, e.g., Thomas v. Potter*, 93 Fed. App'x 686, 688 (6th Cir. 2004) (holding a warning letter could not support a prima facie case of employment discrimination). Plaintiff offers no evidence he was demoted, his pay changed, or his responsibilities were significantly modified because of the warning. The warning merely presented Plaintiff with documented evidence of his shortcomings at Chrysler and placed him on notice his

12

conduct violated two company standards.  Furthermore, "[a] decision which is subsequently overturned through internal processes is not an adverse employment action."  *Id.* (citing *Dobbs-Weinstein v. Vanderbuilt Univ.*, 185 F.3d 542, 546 (6th Cir. 1999)).  Plaintiff's March 2009 written discipline was rescinded in September 2009 through the union grievance process.  Therefore, Plaintiff has not suffered a final or lasting adverse employment action sufficient to support his prima facie case.

### No Causal Connection Exists

Plaintiff argues he can establish the fourth element of his prima facie retaliation case because of the temporal proximity between his protected activity and the written discipline, and on his conclusion that Zatko was involved in the decision to issue the warning.  While proximity in time between an adverse action and protected activity may be relevant indirect evidence to support a causal connection, the Sixth Circuit has repeatedly held "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other *compelling evidence*."  *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 546 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000)) (emphasis added); *see also Chandler v. Specialty Tires of Am., Inc.*, 283 F.3d 818, 826 (6th Cir. 2002) ("[P]roximity alone may not survive summary judgment . . . nor does it imply causation.").

This is not a case where Defendants retaliated against Plaintiff immediately after learning of his protected activity -- sightly over a month passed between the date Plaintiff first complained to Weber about the "new rope" comment and when Chrysler issued a written discipline.  Other than temporal proximity, Plaintiff offers no compelling evidence of retaliation to support his claim.  His contention Zatko was involved in the decision to discipline him is not supported by evidence, only

speculation. The evidence reflects Boik addressed with Plaintiff his work performance and his repeated failure to listen to supervisors. Plaintiff's "conclusory allegations, speculation, and unsubstantiated assertions" about Zatko's involvement are not evidence and cannot survive summary judgment. *See Gooden v. City of Memphis Police Dep't*, 67 Fed. App'x 893, 896 (6th Cir. 2003).

### Plaintiff Has Not Established Pretext

Even if Plaintiff satisfied his prima facie case, his retaliation claims would still fail. Chrysler produced ample evidence of a legitimate, nondiscriminatory reason for disciplining Plaintiff. Chrysler disciplined Plaintiff in March 2009 for repeatedly failing to leave his work station in proper condition despite explicit directions from management. Plaintiff was verbally warned about his failures numerous times before receiving a formal written discipline. Poor work performance is a legitimate, nondiscriminatory reason for taking an adverse action and, "by articulating such a reason, [Defendants met their] initial burden under the *McDonnel Douglas/Burdine* framework." *Imwalle*, 515 F.3d at 546; *Majewski*, 274 F.3d at 1116. The final burden therefore shifted to Plaintiff to prove Defendants' stated reasons for the discipline are in fact a pretext designed to hide retaliation. *Id.*

Plaintiff can establish pretext "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate [Defendants'] challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003) (citing *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)). Regardless of which option is used, Plaintiff retains the ultimate burden of producing "sufficient evidence from which the jury could reasonably reject [Defendants'] explanation and infer [Defendants] 'intentionally discriminated' against him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). Plaintiff cannot satisfy this burden. As the record reflects (discussed above), Chrysler had a legitimate basis for issuing the discipline.

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

Plaintiff's final claim against Defendants is for intentional infliction of emotional distress. To succeed with this claim, Plaintiff must establish: (1) Defendants intended to cause Plaintiff emotional distress or should have known such serious emotional distress would result; (2) Defendants' conduct was outrageous, extreme, beyond all possible bounds of decency, and utterly intolerable in a civilized community; (3) Defendants' conduct proximately caused Plaintiff's psychic injury; and (4) Plaintiff's emotional distress is so serious that no reasonable person could be expected to endure it. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008); *Ekunsumi v. Cincinnati Restoration, Inc.*, 120 Ohio App. 3d 557, 562 (1997).

Even when viewing the facts (discussed above) in a light most favorable to Plaintiff, Plaintiff fails to raise a genuine issue of material fact regarding each element of his claim. Assuming all conduct occurred as Plaintiff alleges, it does not constitute the sort of extreme and outrageous behavior beyond all bounds of decency as required by Ohio law. *Talley*, 542 F.3d at 1110.

Specifically, Plaintiff's claim fails because he fails to show his emotional distress is so "serious and of such a nature that no reasonable person could be expected to endure it." *Ekunsumi*, 120 Ohio App. 3d at 562. He claims he began attending counseling sessions because of the racially hostile work environment he endured at Chrysler. Nonetheless, the Ohio Supreme Court requires the level of emotional distress not only to be serious, but also "severe and debilitating." *Paugh v. Hanks*, 6 Ohio St. 3d 72, 78 (1983). Some examples of actionable distress include "traumatically induced neurosis, psychosis, chronic depression, or phobia." *Id.* "Serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." *Id.* Additionally, to prevent summary

15

judgment, Ohio law requires Plaintiff to present "some 'guarantee of genuineness' in support of [his] claim." *Buckman-Pierson v. Brannon*, 159 Ohio App. 3d 12, 21 (Ohio Ct. App. 2004).

Plaintiff offers no such guarantee. For example, Plaintiff provides no counseling records and fails to explain counseling sessions admittedly taken in years past before Zatko was his supervisor. Moreover, Plaintiff admits Zatko's comments caused him to miss only a half day of work (Doc. No. 43 at 30). There is simply no evidence showing Plaintiff's emotional distress was "severe" and "debilitating" as is required by law.

## CONCLUSION

For the foregoing reasons, Defendants' Motions for Summary Judgment are granted.

IT IS SO ORDERED.

                                                      s/ *Jack Zouhary*
                                                      JACK ZOUHARY
                                                      U. S. DISTRICT JUDGE

                                                      November 16, 2011